541 So.2d 1153 (1989)
Goldie SOBELMAN, Petitioner,
v.
Alan SOBELMAN, Respondent.
No. 71683.
Supreme Court of Florida.
April 6, 1989.
Arthur D. Ginsburg and Kevin P. Smith of Ginsburg, Byrd, Jones & Dahlgaard, Sarasota, for petitioner.
Daniel Joy, Sarasota, for respondent.
A. Matthew Miller of Miller, Schwartz & Miller, P.A., Hollywood, amicus curiae for American Academy of Matrimonial Lawyers, Florida Chapter.
KOGAN, Justice.
We have for review an opinion of the Second District Court of Appeal in Sobelman v. Sobelman, 516 So.2d 7 (Fla. 2d DCA 1987), which is in express and direct conflict with Fiveash v. Fiveash, 523 So.2d 764 (Fla. 1st DCA 1988) and Clark v. Clark, 509 So.2d 364 (Fla. 4th DCA 1987). We have jurisdiction. Art. V, § 3(b)(3), Fla. Const.
After twenty-two years of marriage, Goldie and Alan Sobelman obtained a divorce. The final judgement of dissolution of marriage awarded $1,250.00 per month to the wife as permanent periodic alimony and $500.00 per month as child support for the couple's one minor child. The marital home was awarded to both parties as tenants-in-common, with the wife having exclusive possession during the minority of the youngest child. The wife was obligated to continue payments on the note and mortgage.
The trial court ordered that the husband purchase life insurance to secure the alimony award. The husband appealed this provision of the order, which the Second District Court ordered struck "so that the life insurance award is proper under either the statutory provision or the pertinent decisional law." Sobelman v. Sobelman, 490 So.2d 225, 226 (Fla. 2d DCA 1986). On remand, the trial court reinstated the life insurance requirement. The husband again appealed the judgment, and the district court held that although an obligor can be ordered to purchase life insurance to secure his or her obligation to pay alimony, such insurance can only be used to secure arrearages of delinquent alimony. The court reversed the award because the wife had not shown a need to protect against alimony arrearage.
The principal issue before this Court is whether a party obligated to pay alimony may be ordered to maintain life insurance as security for the alimony award without limiting the insurance obligation and the payment of insurance proceeds to accrued alimony arrearages. Section 61.08(3), Florida Statutes (1985), which governs this situation, provides:

*1154 To the extent necessary to protect an award of alimony, the court may order any party who is ordered to pay alimony to purchase or maintain a life insurance policy or a bond, or to otherwise secure such alimony award with any other assets which may be suitable for that purpose.
The district court held that the phrase "to protect an award of alimony" is limited to insuring that persons due alimony are secured when the payments are in arrears. Sobelman, 516 So.2d at 9. The wife and the American Academy of Matrimonial Lawyers, as amicus, argue that the statutory provision should not be limited in such a manner, but rather should be read to protect the financial well being of the obligee in cases in which the trial court determines the presence of need on the part of the receiving spouse. In this case, the wife is concerned that if the husband passed away before the minor child reached majority, she would have the financial burden of providing for herself and the child, as well as satisfying a $50,000.00 mortgage.[1] She argues that section 61.08(3) should be interpreted to protect against that type of situation, in addition to arrearage.
The statute is ambiguous and subject to both reasonable interpretations. Section 61.08(3) does not expressly limit the protection to include only arrearage, nor does it expressly extend protection beyond arrearage.
Chapter 61 was enacted to promote the amicable settlement of marital disputes and "[t]o mitigate the potential harm to the spouses and their children caused by the process of legal dissolution of marriage." § 61.001(2)(c), Fla. Stat. (1985). That section, entitled "Purpose of chapter" also provides that the provisions of chapter 61 shall be liberally construed and applied to further those purposes. § 61.001(1), Fla. Stat. (1985). This preamble sets the tone for how the judiciary should interpret the provisions of chapter 61. Therefore, we find the spirit of this act supports a broader reading of section 61.08(3) than that given by the district court. Accordingly, we hold that section 61.08(3), Florida Statutes (1985), permits the trial court, as an integral part of the equitable distribution and support scheme, to order an obligated spouse to purchase life insurance or other security to protect the financial well being of the other spouse, as well as any arrearage owing from alimony obligations.[2]
The husband in this case further argues that if he is required to purchase a life insurance policy, then the proceeds paid upon his death will amount to postmortem alimony, which is prohibited under Florida common law. O'Malley v. Pan American Bank of Orlando, N.A., 384 So.2d 1258, 1260 (Fla. 1980); Aldrich v. Aldrich, 163 So.2d 276, 280 (Fla. 1964); Dwyer v. Dwyer, 513 So.2d 1325, 1327 (Fla. 2d DCA 1987). We do not agree that the life insurance proceeds would be postmortem alimony. Upon the death of an insured, the insurance company, not the insured's estate, pays the insurance proceeds to the beneficiary. In this case the insurance company would pay the proceeds to the wife upon the death of the husband. Neither the husband nor his estate would be obligated to make any payments to the wife. Thus, the concern that a broad construction of section 61.08(3) would permit postmortem alimony is unfounded. Fiveash, 523 So.2d at 765; Clark, 509 So.2d at 365.
We therefore hold that section 61.08(3) permits the trial court to order an obligated *1155 spouse, as an integral part of the equitable distribution and support scheme, to purchase life insurance or other security either to satisfy arrearages or to otherwise protect the receiving spouse in appropriate circumstances. We quash the decision of the Second District Court of Appeal and remand this case to the trial court for proceedings consistent with this opinion.
It is so ordered.
OVERTON, McDONALD, SHAW, BARKETT and GRIMES, JJ., concur.
EHRLICH, C.J., concurs specially with an opinion.
EHRLICH, Chief Justice, concurring specially.
I agree that section 61.08(3), Florida Statutes (1985), should not be read restrictively to permit the trial court to order an obligated spouse to purchase life insurance only to secure payment of arrearages in alimony. More flexibility is required to allow the trial court to fashion a truly equitable settlement.
However, I would require that the purchase of life insurance be an integral part of the equitable distribution and support scheme, not something additional provided to the receiving spouse. That, I believe, is the import of the statutory language "to protect an award of alimony ... or to otherwise secure such alimony award" when read in pari materia with the rest of chapter 61 and its stated purpose "[t]o mitigate the potential harm to the spouses and their children caused by the process of legal dissolution of marriage." § 61.001(2)(c), Fla. Stat. (1985). In certain circumstances, such as those in this case, it may be necessary to provide some financial security to the receiving spouse after the death of the obligated spouse. To that end, the trial court may require that the obligated spouse purchase life insurance as part of the scheme of equitable distribution and support. What would be unacceptable, in my view, would be for the trial court to equitably distribute the marital assets, order the payment of alimony, and then order the obligated spouse to purchase life insurance over and above that amount.
I would therefore hold that section 61.08(3) permits the trial court to order an obligated spouse, as an integral part of the equitable distribution and support scheme, to purchase life insurance or other security either to satisfy arrearages or to otherwise protect the receiving spouse in appropriate circumstances.[*] Because I assume that in this case the trial court ordered the husband to purchase life insurance as part of the overall equitable distribution and support scheme, I concur.
NOTES
[1] In Clark v. Clark, 509 So.2d 364 (Fla. 4th DCA 1987), and Fiveash v. Fiveash, 523 So.2d 764 (Fla. 1st DCA 1988), the wives were in ill health and for all practical purposes unable to obtain employment. The trial courts in those cases were concerned with the possibility of the husbands predeceasing the wives, leaving them without financial resources. The district courts in both cases upheld the trial court orders requiring the purchase of life insurance to secure the awards of alimony above and beyond the need to protect against arrearage. Fiveash, 523 So.2d at 765; Clark, 509 So.2d at 365.
[2] Obviously, the court will need to consider the financial impact of any such order upon the obligated spouse. Thus, the surrender value of any existing life insurance policy would be an asset for purposes of equitable distribution and any requirement to pay premiums should be taken into account in the determination of the amount of alimony.
[*] Of course, the trial court may also order that an existing life insurance policy be used in this fashion.